JUNE 1822.

Kennedy
vs
Boggs

</div>

---

## COURT OF APPEALS, JUNE TERM, 1822.

### Kennedy *vs.* Boggs.

APPEAL from *Baltimore* county court. This was an action of *trover* brought on the 10th of March 1818 by the appellant, as provisional trustee of *F. A. Abbott*, an insolvent debtor, against the appellee, for two promissory notes. The general issue was pleaded; and at the trial the plaintiff gave in evidence, that the said *Abbott*, on the

*There is no adequate provision in the general insolvent laws of this state, for disposing an insolvent debtor of his property, from the time of his application for relief.*

*A provisional trustee, appointed under the act of 1816, ch. 221, s. 2, is to take possession of the insolvent's property; but no power is given him to recover such property from third persons; where that is to be done, (there being no permanent trustee,) the name of the insolvent must be used.*

*The possession only, passes to the provisional trustee, and the absolute property remains with the insolvent until a permanent trustee is appointed, in whom, by operation of the insolvent acts, the title of the property vests.*

*The provisional trustee has only power to possess and preserve the insolvent's property for the benefit of his creditors; and for the protection of that right he may sue if his possession is invaded.*

*To avoid a deed or assignment by an insolvent debtor, it must be made with a view and under the expectation of becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference. Per Chase, Ch. J.*

*The time when a person becomes an insolvent debtor, under the insolvent laws, is when he files his petition for the benefit of those laws. Ibid.*

*An assignment made by an insolvent through coercion of the law, is not an undue and improper preference. Ibid.*

*Before a final release can be obtained by an insolvent, the trustee must certify to the court that he has received all the property contained in the insolvent's schedule Ibid*

*Where there is no final discharge the petition of the insolvent, and all the proceedings under it, are ineffectual and void, and the property will be divested out of the trustee, and revert to the petitioner, and vest in him by operation of law, as a resulting trust, (the original object of the trust having failed;) and will be liable to be operated on and affected under the general laws as the property of the petitioner. Ibid.*

June 1822. 29th of November 1817, sold to *W. Bromwell* all his goods
and stock of merchandize, for about the sum of $3600, to
be paid $500 in cash, and the residue in notes endorsed by
*Hosea Johns;* and that the notes which this action is
brought to recover, were two of the notes so given.   On
or about the first of December 1817, a few days after
*Abbott* closed his store, he delivered to *D. Bosley,* of the
house of *Bosley* and *Jarrett,* all the notes drawn by *Brom-*
*well,* with instructions to pay himself the amount due to
the firm of *Bosley* and *Jarrett,* (which was admitted to
have been about $447,) and to hold the rest subject to his,
*Abbott's,* order.   On the 4th of December following, on
the petition of the defendant, (now appellee,) a writ of
*ne exeat* issued against *Abbott* from *Baltimore* county
court, on an allegation that he was indebted to the defen-
dant, and his copartner, *D. Leche,* in a sum of money
equal to the amount of the notes for which this action was
instituted.   *Abbott* was taken on said writ on the fifth day
of the month, and called with the sheriff's officer, and in
company with the defendant, on *Bosley,* and directed him
to deliver to the defendant the notes in question, which
was accordingly done.   On the same day, but after his re-
lease from the writ of *ne exeat, Abbott* was committed to
prison at the suit of *Mary Butler,* for a claim of $47 50,
and remained in prison until the 19th of December 1817,
when he applied to the chief judge of *Baltimore* county
court for the benefit of the insolvent laws of this state;
the proceedings under which application were offered in
evidence by the plaintiff.   By these proceedings it ap-
peared that his application was referred to the commis-
sioners of insolvent debtors for the city and county of
*Baltimore,* and proceedings had thereon according to the
act of assembly "relating to insolvent debtors in the city
and county of *Baltimore.*"   On the 19th of December
1817, he received his personal discharge as an insolvent
debtor, and at the same time the plaintiff was appointed
his provisional trustee.   The 7th of January 1818 was ap-
pointed by the commissioners for *Abbott's* appearance be-
fore them; and on the 16th of April 1818, he was finally
released under his said application.   The plaintiff further
gave in evidence, that *Abbott* had no other visible proper-
ty than the stock of goods assigned as aforesaid to *Brom-*
*well,* and that no other property was returned in his sche-

Kennedy
vs
Boggs

dule.   At the time when the said notes were delivered to
the defendant, the debts of *Abbott* far exceeded the
amount of his property.   The defendant then gave in
evidence, that the writ of *ne exeat* was issued to prevent
*Abbott* from leaving this state, he being *bona fide* indebt-
ed to the defendant in the sum of $878 08, upon two
notes, both dated on the 20th of September 1817, and
drawn one at four months and the other at ninety days,
and that the two notes in the declaration mentioned were
delivered over to the defendant in discharge of said debt,
and were so delivered in consequence of *Abbott's* arrest
under the writ of *ne exeat*, and while *Abbott* was in the
custody of the sheriff in virtue of that arrest.   On this
evidence the plaintiff prayed the court to direct the jury,
that if they believed that the notes in controversy were
delivered to the defendant by *Abbott* with a view or under
an expectation of being or becoming an insolvent debtor,
that then the plaintiff was entitled to recover.   Which
direction the court, [*Dorsey*, Ch. J. *Hanson* and *Ward*, A. J.]
refused to give.   The plaintiff excepted; and the verdict
and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. EARLE and
STEPHEN, J.

*Murray*, *Kennedy* and *Mayer*, for the appellant. 1. The
transfer of the notes to the defendant by *Abbott*, was void
as an undue transfer to a creditor within the meaning of
the insolvent laws of this state.   2. The plaintiff was
competent to institute this action.   On the *first point* they
referred to the acts of assembly of 1804, *ch.* 110; 1805,
*ch.* 110, *s.* 9; 1807, *ch.* 55; 1812, *ch.* 77, and 1816, *ch.* 221,
*s.* 6.   To show that every contract against law was void,
although the act declaring it void also inflicted a penalty,
they cited *Bartlett vs. Vinor, Carthew*, 252.   *Devon vs.
Watts, Dougl.* 89, *(note.) Mitchell vs. Smith*, 1 *Binny's
Rep.* 110.   As soon as a debtor has it in view of becom-
ing insolvent, all his property belongs to his creditors, and
he can make no preference.   His power of alienation is
gone.   *Doe vs. Galliers*, 2 *T. R.* 133.   *Touteng vs. Hub-
bard*, 3 *Bos. & Full.* 291.   *Butler vs. Rhodes*, 1 *Esp. Rep.*
236.   *Newton vs. Chantler*, 7 *East*, 143.   1 *Com. Cont.*
257.   1 *Bac. Ab.* tit. *Bankrupt*, 359.   *Manro vs. Git-
tings & Smith*, 1 *Harr. & Johns.* 497.   The doctrine of

threat of legal process, &c. grew up under the bankrupt laws of *England*, and is not applicable to our insolvent laws. There fraud annulled the transfer; here it might be improper against the policy of the law, and yet not fraudulent. *Small vs. Oudley*, 2 *P. Wms.* 429. *Rust et al. vs. Cooper*, 2 *Cowp.* 629. *Harman vs. Fishar*, 1 *Cowp.* 117. As the debt was not due, the writ of *ne exeat* could not be supported. *Cox vs. Scott, ante* 384. On the *second point* they referred to the acts of 1816, *ch.* 221, and 1820, *ch.* 182. 3 *Bac. Ab.* tit. *Executors and Administrators*, (B. 2.) 14, and *Co. Litt.* 52, b.

*Williams* for the appellee.   1. By the provisions of the insolvent laws, a provisional trustee cannot sue in his own name—1st. Because he is only temporarily appointed, and a mere *depository* of the estate and effects of the applicant; and 2d. He is not specially authorised by the statute which creates him, and by which alone he was recognised. He referred to the act of 1816, *ch.* 221, *s.* 2, and 1 *Bac. Ab.* tit. *Bankrupt*, (D.) 40.

2. The powers and duties of the provisional trustee are presumed to have ceased before this action was brought; they were superseded by the appointment of a permanent trustee; and if the same person was appointed permanent trustee, who had acted as provisional trustee, still this does not enable him to sue as provisional trustee—1st. Because he has declared as a provisional trustee; and 2d. Because he has never entered into a bond as permanent trustee. He referred to the acts of 1805, *ch.* 110, *s.* 2, 4, 8, and 1816, *ch.* 221, *s.* 2, 3, 6.

3. The transfer of the notes to *Boggs* by *Abbott* was not *an undue and improper preference*, within the meaning of the insolvent laws. To render it so it was necessary that the transfer should be shown to be made both "with a view or under an expectation of being or becoming an insolvent debtor," and also "with an intent thereby to give an undue and improper preference to the creditor." He referred to the acts of 1805, *ch.* 110, *s.* 9; 1807 *ch.* 55; and contended that the act of 1812, *ch.* 77, was superseded by the act of 1816, *ch.* 221, and repealed a part of the 9th section of the act of 1805, *ch.* 110; and that there was no penalty attached to a preference under the act of 1816, *ch.* 221. The legislative construction given by the act of 1807, *ch.* 55, of that of 1805, *ch.* 110, *s.* 9. has no

bearing on the act of 1816, *ch.* 221, *s.* 6, and the construction of the 6th section of that act is to be determined by reference to the principles of the common law; or to cases analogous to it.

4. The provisions of the act of 1816, *ch.* 221, *s.* 6, are closely analogous, if not exactly similar to the provisions or constructions under the *English* bankrupt laws, as to voluntary preferences. He cited *Paul's Dig.* 78. 1 *Bac. Ab.* tit. *Bankrupt,* (F.) 486. Conveyances are rendered void which are affected by these ingredients, 1st. That they are made voluntarily. 2d. That they are made with an expectation, or in contemplation of bankruptcy, and thereby to give a preference. Whenever there is the absence of either of these circumstances in point of fact, the common law principle, which justifies a *bona fide* creditor in obtaining payment of his just debt, prevails and protected him. *Alderson vs. Temple,* 4 *Burr.* 2335. *Harman vs. Fishar,* 1 *Cowp.* 117. 123. *Rust et al. vs. Cooper,* 2 *Cowp.* 629. *Thompson vs. Freeman,* 1 *T. R.* 155, 156, *(note.) Smith vs. Payne,* 6 *T. R.* 152. *Hartshorn vs. Slodden,* 2 *Bos. & Pull.* 582. *Dixon vs. Baldwen,* 5 *East,* 178. *Thornton vs. Hargreaves,* 7 *East,* 544. *Small vs. Oudley,* 2 *P. Wms.* 427. *Wheelwright vs. Jackson,* 5 *Taunt.* 109. *Singleton vs. Butler,* 2 *Bos. & Pull.* 283. *Ogden & Thomas vs. Jackson,* 1 *Johns. Rep.* 370. *M'Menony vs. Ferrers,* 3 *Johns. Rep.* 71. *Loche vs. Winning,* 3 *Mass. Rep.* 325. *Phœnix vs. Ingraham's assignees,* 5 *Johns. Rep.* 412. *M'Mechen's Lessee vs. Thornburgh & Grundy,* in this court December 1810. To render a payment or a transfer over from one in insolvent circumstances, to a *bona fide* creditor, the act done must be, 1st. wholly voluntary and unsolicited, and 2d. under an expectation of bankruptcy or insolvency, and to give an undue preference—The *quo animo* of both must be considered. He cited *Thompson vs. Freeman,* 1 *T. R.* 156, and *Hartshorn vs. Slodden,* 2 *Bos. & Pull.* 585.

EARLE, J. delivered the opinion of the court. It has been a complaint against the general insolvent laws of this state, ever since the year 1805, that no adequate provision was made for dispossessing the insolvent of his property, from the time of his application for relief. This provision is not supplied, as has been mistakenly supposed, by the act of 1808, *ch.* 71, *sect.* 3. There must be a petition de-

JUNE 1822.
Kennedy
vs
Boggs

pending, according the terms of this section, before the court, or even the judge, can go into the appointment of a trustee; and by far the greater part of the applications for relief are made by persons, actually imprisoned during the recess of the county courts. This inconvenience, it appears to have been one of the objects of the act of 1816, *ch.* 221, *sect.* 2, to remove, in the city and county of *Baltimore.*

By this law a provisional trustee is for the first time mentioned, and to the act we must look for a description of his powers. By the words and terms of it, this trustee is to take possession, for the benefit of the creditors of the insolvent, applying to the judges for relief, "of all property, estate, and effects, books, papers, accounts, bonds, notes and evidences of debts," and until he is possessed of them, and the trustee's possession is reported by the commissioners to the judge, the insolvent cannot obtain even a personal discharge from imprisonment. The provisional trustee is thus to receive all the property, &c. of the insolvent, of which he is possessed, and mention is no where made in the law, of a power in him to wrest the property, &c. of the insolvent, out of the hands of third persons. Where this is to be done, and no further trustee has been appointed, the court think the name of the insolvent must be used for the purpose. The possession only passes to the provisional trustee, and the absolute property remains with the insolvent until a permanent trustee is appointed, in whom, by the operation of the acts, the title to the property vests. It does not vest at all, according to our ideas, in the provisional trustee, and therefore he can sustain no suit, which involves the right of property. The action brought on this occasion is an action of trover, and to maintain it, the plaintiff must have a general or special property in the chattel contended for. If a general property, the legal possession follows it, and need not be shown, but if a special property is relied on, the plaintiff must prove the actual possession of the article converted by the defendant to his use. The last, the special property, is not here pretended, and the first, the general property, we have said, remains with the insolvent.

Neither is the power to possess himself by suit against third persons, of the insolvent's effects, incidental, in the

opinion of the court, to the office of this trustee, nor does it grow out of the nature of his trust.

The trust is to continue, it is admitted, until a permanent trustee is chosen, which the act contemplates to be done, and which ought to be done, in a short time after the application of the insolvent for the benefit of the law, but while it continues, it is a power only to possess and preserve for the benefit of the creditors.

For the protection of these rights, he may sue, if his possession is invaded, but his action would be grounded on his possession, derived from the insolvent, and on his special property consequent thereon, and may be prosecuted by him, without naming himself trustee. Very different is the action brought on this occasion. It must be supported on the general property of the plaintiff, which is always followed up by the legal possession, and agreeably to the opinion of the court already expressed, it is not in this case in the provisional trustee, or the plaintiff, who was only appointed provisional trustee. In this it is unlike the cause of the administrator *durante minoritate*. The title of the property of the intestate vests in him, and he may bring suits in relation thereto, or may be sued, as the intestate himself could have been, although his office is continued for a limited time only.

But if it was conceded, that the provisional trustee had power to sue third persons generally, for the purpose of possessing himself of the property of the insolvent, we should nevertheless think the action in this case could not be maintained. It is a suit against a creditor of the insolvent, to recover damages for the wrongful conversion of certain promissory notes, which, it is admitted, were delivered by the insolvent himself, before his actual insolvency, to the defendant, to discharge a just debt due to him. Where a transfer of this kind is vacated, the property vests in the permanent trustee alone, by the act of 1816, *ch.* 221, sect. 6, and he alone can maintain a suit for it. Whatever then may be the power of the provisional trustee, over the property in the schedule of the insolvent, and this we have attempted to define, we can have no doubt, he is unable to sue for property which has been transferred to a creditor, as these promissory notes have been.

Many other points were pressed by counsel in the argument of this case, upon which the court do not deem it necessary to express an opinion.  We will, however, further barely state, that in our judgment, the question involving the invalidity of the assignment of the notes by *Abbot* to *Boggs*, cannot be regularly examined, until a permanent trustee is appointed, as he alone can assert the rights of the creditors of the insolvent in this particular.  We venture no opinion as to the character of this transaction, but if this assignment is to be considered null and void, it is to be vacated only for the purpose of vesting the property in the permanent trustee, to be distributed among all the creditors of the insolvent; and this cannot be done, where no such trustee has been appointed.

The court below assigned no reasons for the opinion they gave; and we know not what views they took of this subject.  We believe, however, they had ample ground to refuse the instruction to the jury prayed for by the plaintiff, and we therefore affirm their judgment.

CHASE, Ch. J.  The facts stated in this case on which the prayer to the court below was founded, were not legally sufficient to warrant the court in giving the direction prayed, and the court did right in refusing to give the direction.

The prayer is, that the court should direct the jury that if they believed the above mentioned notes were delivered to the defendant by *Abbot* with a view or under an expectation of being or becoming an insolvent debtor, that the plaintiff was entitled to recover.

The material fact in the case is, that on the 5th of December 1817, while under arrest and in the custody of the sheriff on the *ne exeat*, *Abbot* directed *Bosley* to deliver to the defendant, in discharge of the debt due to him, the two promissory notes for which this suit is brought.  On the 29th of November 1817, *Abbot* had sold all his goods and stock in trade, and had given a preference to *Bosley* and *Jarrett*, by depositing the promissory notes with them to pay themselves, and apply the residue as *Abbot* should direct.

The payment to the defendant was not a voluntary payment, but was made under the constraint and coercion of the law, and against the will of *Abbot*.  The

cause of the *ne exeat* was the preference *Abbot* had given

to *Bosley* and *Jarrett* in the preceding November, and *Abbot's* unwillingness to pay or secure the debt due to the defendant

So far from *Abbot's* manifesting an intention to give an undue preference to the defendant, he evinced a strong desire to prevent his being paid, and was compelled to deliver the promissory notes by the proceeding under the *ne exeat.*

The prayer is defective in not having inserted the words. "and with intent thereby to give an undue and improper preference." To avoid the deed or assignment it must be made with the view and under the expectation of becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference. There must be the concurrence of both circumstances to render the deed null and void, and the jury must so find.

On the 19th of December 1817, *Abbot* applied for the benefit of the insolvent laws. When does a person become an insolvent debtor under the insolvent law? I know no criterion by which it can be so well and certainly ascertained as the time of filing his petition. It is then he acknowledges his inability to pay his debts, and applies for relief.

The assignment was made 13 or 14 days prior to the time of *Abbot's* filing his petition, and when made it was not a voluntary but a compulsive act, produced by the coercion of the law, which precludes the circumstances of undue and improper preference.

It is stated in the case, that on the 16th of April 1818, *Abbot* was finally released, and that on the 10th of March 1818, this suit was instituted. This suit was brought before the final release was obtained.

Before a final release or discharge can be obtained, the trustee must certify to the court that he has received all the property contained in the schedule belonging to the insolvent debtor. No such certificate appears in this case.

If there was no final discharge, which was admitted in argument, (indeed there could not be without the certificate of the trustee that he had received all the property specified in the schedule,) then the petition of the insolvent debtor, and all the proceedings under it, became ineffectual and a nullity, and the property will be divested out

JUNE 1822.

of the trustee, and revert to the insolvent debtor, and vest in him by operation of law as a resulting trust, the original object of the trust having failed, and the property will be liable to be operated on and affected under the general laws as the property of the insolvent debtor.

I am of opinion that the judgment of the court below be affirmed.

JUDGMENT AFFIRMED.